Erba Ione DEVINEY, Appellant,

v.

Charles M. McLENDON, Appellee.

No. 7411.

Court of Civil Appeals of Texas, Beaumont.

May 24, 1973.

Tuck R. Chapin, San Antonio, for appellant.

Huson, Clark, Thornton & Summers, San Antonio, for appellee.

KEITH, Justice.

Plaintiff below appeals from a take nothing judgment entered after a trial to a jury and we will designate the parties as they appeared in the trial court. Plaintiff's vehicle was struck from the rear by an automobile driven by the minor defendant and the jury acquitted the defendant of all acts of primary negligence submitted: (1) failure to keep a proper lookout; (2) excessive speed; (3) failure to properly apply his brakes; and (4) failure to turn to the left to avoid the collision. The proximate cause issues following each issue of primary negligence were submitted conditionally and were not answered. The court also submitted an instruction embodying the doctrine of sudden emergency.

No issues of contributory negligence were submitted. The damage issues were answered; but, there being no findings of primary negligence, the trial court entered judgment for defendant after overruling plaintiff's motion for judgment non obstante veredicto.

Plaintiff has six points of error: (1) the error of the trial court in overruling her motion for judgment non obstante veredicto since, as she contends, she established at least one act of negligence; (2) error in giving the instruction on sudden emergency; and (3), (4), (5), and (6) that there was no evidence to support the negative findings on each of the primary acts of negligence submitted to the jury as summarized herein.

■ All of plaintiff's points, except the second, are no evidence points and, in deciding the questions presented, we must consider only the evidence and inferences tending to support the findings and disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965).

Both parties were eastbound upon Loop 410 in San Antonio, a controlled access road with two eastbound lanes. According to defendant's evidence, he had been traveling in the outside lane and, as he approached an entry ramp, another vehicle entered the outside lane from the service road. Defendant says that he pulled his vehicle to the left and into the inside lane to avoid this third vehicle entering the main roadway. He then discovered plaintiff's vehicle stopped in the inside lane but was unable to stop and collided with the left rear of plaintiff's car.

Plaintiff testified that she had stopped in the inside lane because a prior collision had blocked both lanes of Loop 410. She said that she had been stopped "several seconds, I would think," when she was struck from the rear by defendant's car. She sustained rather severe injuries from the force of the impact.

Plaintiff tendered the investigating policeman who did not witness our accident, and developed from him that he had "stepped it off," the distance from McCullough Avenue to the point of impact, and found it to be two hundred twenty-five feet or seventy-five yards. (We note, in

passing, that the defendant's mother, who was in the car with her son at the time of the accident, states that the police officer did not measure the distance because of the density of the traffic on Loop 410.)

The police officer said that the defendant told him that he was driving about forty miles per hour, a legal speed in the area, just before the collision; that he looked back momentarily and did not notice the line of cars, including plaintiff's which were stopped in the roadway ahead; that he attempted to swerve to the left but the right side of defendant's car struck the left rear of plaintiff's vehicle.

Plaintiff produced a scale map of the area involved in the collision and many of the witnesses were examined in connection with this exhibit. The questions asked and answers given in connection with this map may have been of value to the jury when all parties were present and participating, but the testimony is most difficult to follow in the cold appellate record.

There was one disinterested witness, an army sergeant who was stopped off the roadway and saw the actual collision. Generally, he corroborated defendant in his account of the accident except that he did not recall any other vehicle entering the roadway as testified by the defendant.

Defendant was a sixteen-year-old high school student with a beginner's driving license which required that an adult licensed operator be in the car at all times while he was driving—his mother being present at the time of the collision. In his deposition, he prepared a diagram explaining how the respective vehicles figured in the collision; and, upon the trial, able counsel for the plaintiff used the deposition testimony in connection with a surveyor's plat, as well as the rough sketch made by the defendant himself. As might be expected, there were conflicts apparent in the distances placed upon the rough map and the professional sketch then before the jury. In her brief, plaintiff sums up this facet of the trial by saying:

"The only problem with Appellee's [defendant's] defense here was that at the time the sketch of the scene was made [upon deposition], he didn't know what the true distances involved were."

Using the discrepancies in the deposition testimony and the actual distances shown upon the surveyor's plat, plaintiff now argues that defendant's own testimony convicts him of failure to keep a proper lookout. We disagree. As was said in Del Bosque v. Heitmann Bering-Cortes Co., 468 S.W.2d 522, 523 [Tex.Civ.App., Houston, 1st Dist., 1971, affirmed 474 S.W.2d 450 (Tex.1971)];

"Appellant's testimony at the trial was not consistent with prior deposition testimony. However, the jury was entitled to believe the testimony given in court."

■ Fundamentally, defendant's estimates of speed, distance, etc., given upon deposition, were no more than his opinions. As was said in Rampy v. Allstate Insurance Company, 492 S.W.2d 85, 87 (Tex. Civ.App., Austin, 1973, writ pending), "The rule is settled that a party is not necessarily bound to a fact which he admits only by way of opinion."

■ Under our system of jurisprudence, the plaintiff had the burden of establishing actionable negligence upon the part of the defendant which proximately caused the collision and her injury to the satisfaction of the trier of the facts. These averments were put in issue by the defendant's general denial. Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S. W.2d 528, 530 (1958). The negative answers of the jury to the several negligence issues amounted to nothing more than a failure or refusal by the jury to find from a preponderance of the evidence that the defendant was negligent—meaning simply that the plaintiff had failed to discharge her burden of proving such facts. C. & R.

Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.1966).[1]

■ Plaintiff seeks a rendition of the judgment below, notwithstanding a complete absence of findings of actionable negligence on the part of the defendant proximately causing her injury. Having examined the record under the appropriate rules, we are of the opinion that the trial court did not err in refusing to enter judgment non obstante veredicto in favor of the plaintiff. Points one, three, four, five, and six are overruled.

■ This series of points, if sustained, would normally require a reversal of the trial court's judgment and a rendition in plaintiff's favor. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Tex.Law Rev. 361, 362 (1960). Plaintiff has no findings of proximate cause; and, more importantly, has no points challenging the failure of the jury to find proximate cause. It is elementary that, ordinarily, the issue of proximate cause is a question of fact for the determination of the jury, even though the defendant be guilty of negligence as a matter of law. 40 Tex.Jur.2d 708, Negligence, § 165 (1962).

■ Plaintiff had no assignments in her amended motion for new trial relating to the failure of the jury to make findings on the several issues of proximate cause. She was, therefore, precluded from assigning error in such regard. Rule 324, Texas Rules of Civil Procedure; Rule 374; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, 890 (1960).

■ Under these circumstances, plaintiff is not entitled to a rendition of the

judgment, regardless of our determination of the points challenging the failure to find actionable negligence. Because of our decision upon plaintiff's second point, infra, the present issue becomes unimportant. In the posture of this appeal, all that plaintiff may obtain under this series of points is a remand of the cause. That being accomplished by our action sustaining point two, plaintiff has received all of the relief to which she has shown herself entitled under our procedural rules.

Plaintiff's complaint against the giving of the instruction on sudden emergency is two-fold: it was not raised by the evidence and its *location* in the charge was improper. We will treat the questions presented in inverse order.

The charge contained the boiler-plate definitions of ordinary care, negligence, and proximate cause—each being so designated by a heading in capital letters. The instruction on sudden emergency followed the definition of proximate cause, bore no heading, and appeared immediately preceding Special Issue No. 1.

■ Plaintiff argues that the jury might well have concluded, from the mere location of the instruction, that it was a part of the definition of proximate cause. Of course, the doctrine of sudden emergency is not a part of the law of proximate cause. As was said by Justice Pope in Yarborough v. Berner, 467 S.W.2d 188, 191 (Tex.1971):

"Its purpose is to excuse conduct which otherwise would be negligence. It concerns the negligence issue . . . ."

■ When the doctrine of sudden emergency is raised by the evidence, it

---

1. We do not necessarily subscribe to the views of one Court of Civil Appeals when it held: "In situations such as this where a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's negative answer need not be supported by affirmative evidence." Smith v. Safeway Stores, Inc., 433 S.W.2d 217, 218–219 (Tex.Civ.App., Tyler, 1968, error ref. n. r. e.). We simply hold that the evidence presented a question of fact for determination by the jury and that the plaintiff failed to carry her burden of persuasion.

would be appropriate for the instruction to follow the definition of negligence since "it is invoked to lower the legal standard of care which a party must exercise to the point where conduct which otherwise might be regarded as negligent or contributorily negligent is not so regarded." *Yarborough,* supra (467 S.W.2d at 192). However, we are unwilling to hold that the placing of the instruction in juxtaposition with the proximate cause definition presents reversible error. Counsel, in his argument to the jury, must so present his case as to make the law contained in the charge applicable to the facts of the case. The argument on sudden emergency must, of necessity, be addressed to the negligence questions since the instruction does not lend itself to an argument concerning proximate cause.

 The court's instruction upon sudden emergency was in the exact language of 1 Texas Pattern Jury Charges § 3.07 at 62 (1969), and plaintiff's objection thereto was specific.[2] In Skelly v. King, 443 S.W.2d 953, 955 [Tex.Civ.App., Amarillo, 1969, reversed and remanded to Court of Civil Appeals, 452 S.W.2d 691 (Tex.1970); subsequent proceedings, 454 S.W.2d 775 (Tex.Civ.App., Amarillo, 1970, no writ)], it was said:

"For one to be afforded the sudden emergency theory of relief of negligent action, the condition or circumstance relied upon must arise suddenly and unexpectedly, must call for action leaving no time for deliberation, and must not be brought about or proximately caused by the negligence of the party seeking to avail himself of the doctrine. Dallas Ry. & Terminal Co. v. Young, 155 S.W.2d 414 (Tex.Civ.App., refused); Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386."

Both *Goolsbee* and *Young* were cited with approval in *Yarborough,* supra (467 S.W. 2d at 191–192).

 From our review of the evidence, some of which has been set out in connection with the specific findings acquitting defendant of actionable negligence, we are of the opinion that there was no evidence which raised the issue of sudden emergency. The giving of the instruction was, therefore, erroneous. In Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546, 550 (Tex.1969), the court said:

"Rule 277, Texas Rules of Civil Procedure, authorizes a special instruction only when it is necessary 'to enable the jury to properly pass upon and render a verdict on such issues.' Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943). There was no such necessity here. See also Lindley v. Lindley, 384 S.W.2d 676 (Tex.Sup.1964)."

The change in procedure compelled by *Yarborough* (from separate issues to explanatory instructions), has made it somewhat more difficult to pass upon the question of reversible error. Under the prior practice, it was easy to determine if the jury found sudden emergency *as a fact,* and our review of the record was then confined to a determination of the quantum of evidence supporting such finding under the usual rules governing such determination. With the explanatory instruction authorized in *Yarborough,* the task is not so readily performed.

It is our opinion, from the entire record, that the instruction on sudden emergency was prejudicial to plaintiff. Only defendant's acts of primary negligence were before the jury and the evidence was such that a finding of negligence—particularly

2. The objection read in part: "In this connection the Plaintiff says that there is absolutely no evidence in the record that raises an issue of an emergency; and in the alternative any situation found by the Jury that could amount to an emergency would be against the greater weight and overwhelming preponderance of the evidence."

on the issue of proper lookout—would have found adequate support in the record. With the record in this condition, it is our opinion that the instruction relaxing the standard of ordinary care was reasonably calculated to cause and probably did cause prejudicial harm to plaintiff so as to require a reversal of defendant's judgment. Levermann v. Cartall, 393 S.W.2d 931, 936 (Tex.Civ.App., San Antonio, 1965, error ref. n. r. e.), and cases therein cited. Plaintiff's second point is sustained.

We are strengthened in our position when we recognize that the doctrine of sudden emergency is somewhat like the doctrine of excused violation of a legislative enactment. Chief Justice Greenhill, discussing the latter in Impson v. Structural Metals, Inc., 487 S.W.2d 694, 696 (Tex. 1972), quoted from Restatement of Torts, Second (1965), § 288A, noting that such a statutory violation is excused, inter alia, under subsection (d) when " 'he is confronted by an emergency not due to his own misconduct.' "

After discussing the evidence in *Impson,* the Court concluded that the negligence of the defendant driver fell "within the realm of ordinary care,—or lack of care" and that the trial court correctly determined that there was no evidence offered of any legally acceptable excuse or justification. (487 S.W.2d at 697) See also, Southern Pacific Co. v. Castro, 493 S.W.2d 491 (Tex. Sup.1973).

In *Castro,* the Court observed: "The court may also give an appropriate definition or instruction concerning any excuse *which is supported by some evidence* and qualifies under the Impson rule." (493 S. W.2d at 498, emphasis ours)

Being of the opinion that there was no "legally acceptable excuse or justification" raising the issue of sudden emergency in this case, we follow the *Impson Rule* and hold that it was error to submit the instruction. (487 S.W.2d at 695)

We are also of the opinion that the error of the trial court in giving the instruction on special emergency amounted to such a denial of the rights of the plaintiff as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Therefore, the judgment of the trial court is reversed and the cause is remanded.